911 F.2d 722
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Timothy Lee HAMPTON, Joel Randall Hampton, infants, by their
next friend and mother, Linda Bowling, Deborah Kay
Arnold, Linda Bowling, Plaintiffs-Appellees,
v.
Esther MOTLEY, and other as yet known employees of the West
Virginia Department of Human Services (formerly
Department of Welfare) Area 25 Social
Services Unit, Defendants-Appellants,
and
Edwin W. FLOWERS, Thomas Tinder, Leon Ginsberg, Sharon Lord,
in their official capacities as Commissioners of the West
Virginia Department of Human Services (formerly Department
of Welfare), West Virginia Department of Human Services,
William David Rogers, William Lytton, Jack Tanner, in their
official capacities as Administrators of Area 25 of the West
Virginia Department of Human Services, Jim Cooper, Frances
Knapp, Ira Gango, Defendants.
 No. 89-2680.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1990.
Decided Aug. 22, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CA-86-590-5).
 William Randolph Fife, Steptoe & Johnson, Charleston, W.V., (argued), for appellants; Herschel Rose, III, Steptoe & Johnson, Charleston, W.V., on brief.
 Robert Shelton Baker, Appalachian Research and Defense Fund, Inc., Beckley, W.V., (argued), for appellees; Winifred L. Buch, Beckley, W.V., on brief.
 S.D.W.Va.
 732 F.SUPP. 43.
 REVERSED AND REMANDED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 In this appeal, we consider whether qualified immunity shields a West Virginia social worker, Esther Motley, who removed three children from their mother's home in 1974. The children, Timothy and Randall Hampton and Deborah Arnold, and their mother, Linda Bowling, brought this action against the West Virginia Department of Human Services (the Department) and certain of its administrators and employees[1] under 42 U.S.C. Sec. 1983, contending that the children were not afforded their substantive due process right to affirmative protection while in the legal custody of the Department and that the family was denied procedural due process. The family also asserted pendent state law claims for negligence.
 
 
 2
 The district court on cross-motions for summary judgment dismissed Bowling and Arnold's claims as time-barred, dismissed the Department and all named defendants except Motley in her individual capacity, and ordered Motley to stand trial on the Hampton boys' claims. Motley challenges the district court's determination that she is not entitled to qualified immunity.[2] We reverse.
 
 I. Facts
 
 3
 On January 4, 1974, social worker Motley removed 2-year-old Timothy, 4-year-old Randall, and 9-year-old Deborah (Bowling's daughter from a previous marriage) from the home of Linda Bowling (then Hampton). Motley was accompanied by the boys' father (and Bowling's estranged husband), Jack Hampton, Jr., a diagnosed paranoid schizophrenic.[3] A state court subsequently adjudged the children neglected and awarded custody to the Department, which placed them in foster homes.
 
 
 4
 Over the next ten years, the Hampton boys resided with numerous foster parents, primarily their paternal grandparents. Jack Hampton, Jr., the natural father of Randall and Timothy, lived next door to his parents. The story of the treatment received by these children at the hands of their father and paternal grandparents while in the custody of the West Virginia Department of Human Services is shocking.[4] The neglect and incompetence exhibited by the Department and its employees in this case reflect a gross absence of professionalism and humanity where such qualities should be most expected. The Department provided only irregular inspection or supervision of the children's placements, despite reports from a psychiatrist and other professionals stating that the boys' father had a history of beating them in anger, recommending placement outside the grandparents' home, and describing "all kinds of pathology" in the extended family. Timothy and Randall testified that they were harshly beaten and otherwise abused by the grandparents, their father, and other adult relatives. The Department did not perform its first formal review of the children's placement until 1984, ten years after it removed the children from their mother's home.[5]
 
 
 5
 Unfortunately for the plaintiffs, however, we are not reviewing a decision as to whether Bowling and her children were injured at the hands of the system--they undoubtedly were. The question in this appeal is whether the rights Timothy and Randall Hampton assert against a single defendant, Motley, are constitutional ones and, if so, whether Motley, acting as an employee of a state's executive branch, has a right to qualified immunity in a suit against her individually.[6]
 
 II. Substantive Due Process
 
 6
 In DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 109 S.Ct. 998 (1989), the Supreme Court held that a child in the custody of a natural parent had no right to affirmative protection from the state, even though the state was alerted that the child was in danger.[7] The Court distinguished and reserved judgment on a situation in which the state had assumed control over the child:
 
 
 7
 Had the State by the affirmative exercise of its power removed [the child] from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect.... We express no view on the validity of this analogy, however, as it is not before us in the present case.
 
 
 8
 109 S.Ct. at 1006 n. 9 (citations omitted).
 
 
 9
 In two cases since DeShaney, this court has visited the question of whether the state had an affirmative duty to protect a child. In Milburn v. Anne Arundel County Dep't of Social Servs., 871 F.2d 474 (4th Cir.), cert. denied, 110 S.Ct. 148 (1989), a father sued for injuries inflicted upon his child by foster parents in a state-licensed foster home. Applying DeShaney, we held that at most the Milburn complaint charged a failure to protect a child against private violence--that the foster parents were not state actors where the only state action involved was the licensing of the foster home. However, our opinion carefully noted that the child was voluntarily placed in a foster home by his parents and that the determination of whether private parties such as foster parents might be state actors must be determined by individual case analysis. Id. at 476-79. Similarly, in Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990), where the defendants apparently transferred custody of a child from the plaintiff/father to the child's grandmother and mother, we pointed out that neither the home of the mother nor grandmother was operated by the state or its agents, so that any harm suffered by the child was not inflicted by the state. Id. at 392.
 
 
 10
 In the case sub judice, however, West Virginia officials not only caused the children to be removed from their mother's custody but assumed control over them--placing them in various foster homes over a period of ten years. The Department continued its control by ostensible, although woefully inadequate, supervision of the children's treatment in the foster homes. The circumstances here fit the hypothetical issue stated, but not decided, by the Supreme Court in DeShaney.
 
 
 11
 Once again, however, that issue escapes confrontation because, even if we were to decide that West Virginia officials were under a substantive due process duty to provide affirmative protection to these children, we would be compelled to conclude that Motley is entitled to qualified immunity. Because the issue of constitutional responsibility of state employees under circumstances such as those present in this case is still an open one, it follows that the contours of the substantive due process right Motley is accused of violating are not sufficiently clear to hold her liable for civil damages. Anderson v. Creighton, 483 U.S. 635, 638-40 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).
 
 III. Procedural Due Process
 
 12
 Timothy and Randall present two procedural due process arguments. They first urge that their constitutional rights were violated in January 1974, when they were separated from their mother and placed in the legal custody of the Department without procedural due process.[8] In addition, they contend that their rights to procedural due process were violated on a continuing basis, when the Department failed to review their foster home placement as required under West Virginia law.
 
 
 13
 * The Hamptons' constitutional argument concerning the separation of their family is grounded on the long-established principle that the right to familial integrity is a fundamental liberty interest protected by the Due Process Clause of the fourteenth amendment. See Meyer v. Nebraska, 262 U.S. 390, 399 (1923); see also Santosky v. Kramer, 455 U.S. 745, 753 (1982), and Stanley v. Illinois, 405 U.S. 645, 651-52 (1972) (collecting cases). While "[d]ue process does not mandate a prior hearing in cases where emergency action may be needed to protect a child," Weller, 901 F.2d at 393, "the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed," Duchesne v. Sugarman, 566 F.2d 817, 826 (2d Cir.1977). Under this standard, the initial emergency taking of the children was permissible only if the family was afforded notice and an opportunity to be heard within a reasonable time thereafter.
 
 
 14
 However, Motley is entitled to summary judgment in the absence of "evidence sufficient to create a genuine issue as to whether" the Hamptons' due process rights were violated and as to whether she violated their rights. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Here, that evidence is lacking on both prongs. The state court record reflects that the mother, Bowling, was present at the hearing in which the Department was awarded custody of the children. Nothing in the pretrial record contradicts this official record except Bowling's bald statement that she was not present. "When the moving party has carried its burden [in seeking summary judgment], its opponent must do more than simply show that there is some metaphysical doubt at to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).
 
 
 15
 Moreover, the Hampton boys' claim against Motley rests on the implication that she, as a social worker, was responsible for providing notice of the custody proceedings. While a West Virginia statute provides that parents must be given notice of child custody proceedings, the statute does not make clear where responsibility for providing that notice is placed. See W.Va.Code Sec. 49-6-2. An affidavit by the then-county prosecutor (now a state court judge) indicates that social workers were not responsible for providing notice. For summary judgment purposes, this uncontradicted affidavit indicates that the practice in West Virginia child custody cases was for prosecutors to provide notice. See generally Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986), and Adickes v. S.H. Kress & Co., 398 U.S. 144, 160-61 (1970) (perils of failing to counter supported motion for summary judgment).[9]
 
 
 16
 Because the Hampton boys have not "set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), Motley is entitled to summary judgment on this issue, see Anderson v. Liberty Lobby, 477 U.S. 242, 249-52 (1986), and it is not necessary to consider the question of qualified immunity in this context.
 
 B
 
 17
 Timothy and Randall's second procedural due process argument is similarly unavailing. They rely on In re Willis, 157 W.Va. 225, 207 S.E.2d 129 (1973), for the proposition that they were denied due process because the Department did not regularly review their foster home placements. Willis, however, holds only that a family must be provided with notice and an opportunity to be heard within a reasonable time after the initial taking of the children. See supra Part III.A. It does not establish a right to ongoing placement review.
 
 
 18
 The Hamptons assert in another context that the Department violated a 1977 statute directing the Department to file periodic reports with the court concerning the status of children in foster homes. See W.Va.Code Sec. 49-6-8. The role of state law in Sec. 1983 analysis has been the locus of considerable confusion, see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-41 (1985) (attempting to clarify the issue), but it is clear that an asserted violation of a state law does not automatically give rise to a constitutional violation. Weller, 901 F.2d at 392. To provide the basis for a due process claim, the state law must create an underlying property or liberty interest. Loudermill, 470 U.S. at 538; Davis v. Scherer, 468 U.S. 183, 193 n. 11 (1984). Because of this threshold requirement, the Supreme Court has explained that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Davis, 468 U.S. at 194.
 
 
 19
 Here, the Hamptons have not suggested that Sec. 49-6-8 created a liberty or property interest.[10] Had they asserted such an interest, we could not conclude--given that the cases exploring the interplay of state statutory and federal constitutional law largely post-date the events here in issue--that Motley should be deprived of immunity from suit for allegedly violating the West Virginia statute in question. See Creighton, 483 U.S. at 640; Harlow, 457 U.S. at 818.
 
 IV. Conclusion
 
 20
 We therefore reverse the order denying Motley's motion for summary judgment and remand to the district court for appropriate disposition of the Hamptons' pendent state law claims.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 [1]
 In addition to the named defendants, the complaint lists as defendants "as yet unknown employees" of the Department of Human Services (formerly the Department of Welfare, Division of Family and Children's Services). To date, these persons have not been identified
 
 
 [2]
 Denial of a claim of qualified immunity is immediately appealable. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)
 
 
 [3]
 Bowling asserts that another social worker, Frances Knapp, accompanied Motley. Knapp was dismissed as a defendant below and is not a party to this appeal
 
 
 [4]
 In reviewing Motley's motion for summary judgment, we of course consider the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
 
 
 [5]
 Periodic placement review has been mandated under West Virginia law since 1977. W.Va.Code Sec. 49-6-8
 
 
 [6]
 The Hampton boys' pendent state law negligence claims are not at issue in this appeal
 
 
 [7]
 "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 109 S.Ct. at 1003. However, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--e.g., food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." Id. at 1005-06
 
 
 [8]
 Timothy and Randall also submit that they were denied due process because counsel was not appointed for their mother at the custody proceedings. The failure of the court to appoint counsel would not, in any event, be ascribable to Motley. See also Lassiter v. Department of Social Servs., 452 U.S. 18 (1981) (holding the fourteenth amendment does not require the appointment of counsel in all custody termination cases). We note, however, that two months after the Hampton custody proceedings, the West Virginia Supreme Court held that counsel must be appointed in custody proceedings for indigent parents accused of neglect. State ex rel. Lemaster v. Oakley, 157 W.Va. 590, 203 S.E.2d 140 (1974)
 
 
 [9]
 In any event, providing notice of a custody hearing is the sort of prosecutorial function which would give rise to absolute immunity under Vosburg v. Department of Social Servs., 884 F.2d 133, 135-38 (4th Cir.1989) (holding social workers are absolutely immune from liability when they act "in a prosecutorial, rather than an investigative or 'policing' capacity"). Motley argued below that she was entitled to absolute immunity, but did not raise this contention on appeal. Vosburg was decided after the briefs were filed in this case
 
 
 [10]
 Cf. Weller, 901 F.2d at 392 (holding that the plaintiff "has no property or liberty interest in the specific investigative procedures [prior to the child's removal from the parent] which he contends were neglected")